# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | **EMERGENCY COVID-19 FILING** |
| ) | |
| *Plaintiff*, ) | CASE NO.: 5:18 CR 765 |
| vs. ) | |
| ) | JUDGE JAMES S. GWIN |
| WILLIAM E. CALLAM, ) | |
| ) | |
| *Defendant*. ) | |
| ) | |
| ) | |

## EMERGENCY MOTION FOR REDUCTION IN SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

TO UNITED STATES DISTRICT COURT JUDGE JAMES S. GWIN:

Due to the dire COVID-19 health risks posed to him as an immunocompromised non-violent inmate over the age of sixty (60), Defendant, William E. Callam ("Callam"), files this emergency Motion to commute his sentence to home confinement. This Motion is being made pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended by § 603(b)(1) of the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018) and the guidance set forth in the March 26, 2020 Memorandum issued by Attorney General William Barr.

### I. INTRODUCTION

Attorney General Barr's March 26, 2020 Memorandum (the "Memorandum") authorizes the Bureau of Prisons ("BOP") to transfer at-risk, non-violent inmates from BOP facilities to home confinement when doing so would be safer for the inmates than completing their sentences in prison during the COVID-19 pandemic. Callam, a 62-year old with a compromised immune system and an exemplary record while in prison, is exactly the type of at-risk, non-violent inmate

Barr's directive was meant to protect. The risk of serious illness or death that Callam faces by being forced to remain in a prison that is all but guaranteed to become rampant with COVID-19 greatly outweighs keeping him confined, and therefore, Callam respectfully requests to have his sentence commuted to home confinement.

II. FACTUAL BACKGROUND

Callam pled guilty to one count of wire fraud and four counts of mail fraud pursuant to a plea agreement on January 10, 2019. The Court assessed punishment of 78 months in prison on May 28, 2019, and he was immediately surrendered to the custody of the BOP thereafter. Callam is currently located at Federal Correction Institution ("FCI") Loretto, a low-security United States federal prison in Pennsylvania.

Callam, who is 62 years old, is currently prescribed a corticosteroid, Fluticasone Propionate Nasal Spray USP, which, according to the Centers for Disease Control and Prevention's (CDC) guidelines, causes his immune system to be compromised.[1] Callam has been taking this medication continuously since August of 2019. He has been confined for more eleven months and has had no disciplinary incidents in the BOP. To the contrary, he has worked hard, completed numerous classes, attended self-help meetings, and kept his head down. In particular, Callam has completed a drug addiction class, a gambling addiction class, and nonresidential drug abuse treatment. He regularly attends alcoholic anonymous and gambling anonymous meetings. He has also taught a business class. He has been a model prisoner since his arrival.

This year, COVID-19 unleashed itself on the world. Indeed, the World Health Organization classified COVID-19 as a global pandemic in March 2020.[2] COVID-19 has spread

---

[1] Centers for Disease Control and Prevention, "Groups at Higher Risk for Severe Illness." *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html
[2] The World Health Organization ("WHO") officially declared COVID-19 a global pandemic on March 11, 2020. *See WHO Director-General's opening remarks at the media briefing on COVID-19 - 11 March 2020,* WORLD HEALTH

2

throughout the United States and has now infiltrated the federal prison system at a more alarming rate. According to a *Washington Post* article:

> The numbers of covid-19 cases in the Bureau of Prisons are rising exponentially, at a pace far surpassing the U.S. population at large. On March 20, the bureau's website reported just two covid-19-positive inmates and staff; two weeks later, it reported 174 confirmed cases. That's an increase of 8,600 percent, a much steeper rate of increase than has been recorded among the general population. And because testing has been grossly insufficient, these numbers are almost certainly an undercount.[3]

The number of cases, and now deaths caused by COVID-19, continue to rise. As of April 6, 2020, the BOP's website reports that 196 inmates and 63 staff have tested positive for COVID-19 and that eight inmates have been killed by COVID-19.[4]

Callam files this emergency motion for relief from his sentence because time is of the essence. While COVID-19 has not yet struck FCI Loretto, COVID-19 is quickly spreading throughout the federal prison system and it is only a matter of time before it does strike FCI Loretto and Callam's imprisonment becomes a *de facto* death sentence.

    III.    **LAW AND ARGUMENT**

        A.    THE MEMORANDUM

In an effort to protect the safety of BOP personnel and the inmate population in the face of COVID-19, the Memorandum directs the BOP to transfer, when appropriate, certain at-risk, non-violent inmates who pose minimal likelihood of recidivism from BOP facilities to home confinement.[5] Barr provided the following non-exhaustive list of discretionary factors in assessing which inmates should be granted home confinement:

---

ORGANIZATION, (March 11, 2020), https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-mediabriefing-on-covid-19---11-march-2020.
[3] Lisa Freeland, David Patton and Jon Sands, "We'll see many more covid-19 deaths in prisons if Barr and Congress don't act now," *Washington Post*, April 6, 2020, 4:08 p.m. EDT. *See* https://www.washingtonpost.com/opinions/2020/04/06/covid-19s-threat-prisons-argues-releasing-at-risk-offenders/.
[4] https://www.bop.gov/coronavirus/.
[5] https://www.justice.gov/file/1262731/download.

- The age and vulnerability of the inmate to COVID-19, in accordance with the CDC's guidelines;[6]
- The security level of the facility currently holding the inmate, with priority given to inmates residing in low and minimum security facilities;
- The inmate's conduct in prison, with inmates who have engaged in violent or gang-related activity in prison or who incurred a BOP violation within the last year not receiving priority treatment under this Memorandum;
- The inmate's score under PATTERN, with inmates who have anything above a minimum score not receiving priority treatment under this Memorandum;
- Whether the inmate has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety, including verification that the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face in his or her BOP facility;
- The inmate's crime of conviction, and assessment of the danger posed by the inmate to the community. Some offenses, such as sex offenses, will render an inmate ineligible for home detention. Other serious offenses should weigh more heavily against consideration for home detention.[7]

Barr acknowledged that some inmates will be safer at home than in BOP facilities. Callam is such an inmate. Callam meets substantially all of the factors set forth in Barr's memorandum:

- The CDC guidelines provide that, among others, groups at higher risk of COVID-19 include "[p]eople who are immunocompromised...***including [people with] prolonged use of corticosteroids*** and other immune weakening medications." In August 2019, Callam was prescribed the corticosteroid, Fluticasone Propionate Nasal Spray USP. He has continuously used this corticosteroid since that time, which has compromised his immune system. According to the CDC's guidelines, Callam is in grave danger of serious illness or death from COVID-19.

- Callam is held at a minimum-security facility, FCI Loretto.

- Callam has been a model prisoner since his arrival eleven months ago, focusing on and completing several courses.

---

[6] *See* fn. 1.
[7] *See* fn. 5.

4

- Callam has never committed a BOP violation during his sentence.

- Callam is in the "minimum" risk category under PATTERN.

- Callam has a verifiable reentry plan. He has a 72-year-old wife residing alone in their Ohio home awaiting his return. Moreover, he has a job as an administrative assistant at his stepson's small business waiting for him upon his release, and he will be able to perform his job duties from home during the COVID-19 pandemic to reduce his exposure.

- Callam did *not* commit any crimes that would render him ineligible. Callam committed mail and wire fraud, non-violent offenses, and he is remorseful for his actions and committed to live his life free of crime going forward.

As the foregoing demonstrates, Callam is a prime candidate for release to home confinement based on the guidelines set forth in the Memorandum.

    B.    ADMINISTRATIVE EXHAUSTION

Callam has exhausted his administrative remedies by advocating for himself within FCI Loretto to gain home confinement to no avail. 18 U.S.C. § 3582(c)(1) states, in pertinent part:

> that in any case[,] the court, upon motion of the Director of the Bureau of Prisons, ***or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier***, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that …. extraordinary and compelling reasons warrant such a reduction.

In late March 2020, Callam submitted a request to serve the remainder of his sentence in home confinement pursuant to the Memorandum. Officials at FCI Loretto informed Callam that

he is not eligible for home confinement because the CDC designated persons 65 years old and older at higher risk for COVID-19 and he is 62 years old.[8]

On or around April 3, 2020, Callam submitted a second request for home confinement highlighting that he is highly vulnerable to COVID-19 per the CDC guidelines as his prescription of corticosteroids causes him to be immunocompromised and at higher risk of severe illness or death. On April 7, 2020, officials at FCI Loretto denied his second request stating that the threat of contracting COVID-19 at the prison is not likely, which directly conflicts with the Memorandum and common sense given the rampant spread throughout the world.

FCI Loretto's lackadaisical view of COVID-19 is reckless and Callam is unwilling to gamble his own life with the hope that COVID-19 does not spread throughout the prison like it has throughout the rest of the United States and other federal prisons. Given the extraordinary circumstances, his exhaustion of administrative remedies, and his heightened risk as a 62-year old man with a compromised immune system, Callam now seeks compassionate release from this Court under 18 U.S.C. § 3582(c)(1)(A)(i).

    C.    COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(C)(1)(A)(I)

In addition to being eligible for home confinement pursuant to the Memorandum, Callam is eligible for home release per 18 U.S.C. § 3582(c)(1)(A)(i). As stated above, 18 U.S.C. § 3582(c)(1)(A)(i) allows for the modification of sentences of federal inmates when "extraordinary and compelling reasons" exist. Until December 21, 2018, only the Director of the BOP could request such a sentence reduction; however, with the passage of the First Step Act, the original sentencing court now has jurisdiction to grant inmates compassionate relief upon motion from the inmate. 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b)(1) of the First Step Act of 2018, Pub.

---

[8] Note that as of April 7, 2020 Governor DeWine has been recommending the release of certain Ohio state inmates aged *sixty* (60) and older.

6

L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018). Thus, this Court has jurisdiction to grant the relief sought by Callam through this Motion.

The Sentencing Commission policy statement on reductions of sentences under 18 U.S.C. § 3582(c)(1)(A) provides three specific categories of "extraordinary and compelling reasons." U.S.S.G. § 1B1.13(p.s.), comment. (n.1(A)-(D)). The three categories are as follows: (1) terminal illness of the inmate, or an irrecoverable serious physical, medical, or mental issue that prevents the inmate from providing himself with self-care within the prison; (2) age of the defendant, combined with a serious deterioration in physical or mental health because of the aging process; and (3) death or incapacitation of the caregiver of the inmate's minor children, or incapacitation of the inmate's spouse or partner. See U.S.S.G. § 1B1.13(p.s.), comment. (n.1(A)-(C)).

Here, given the COVID-19 outbreak, "extraordinary and compelling reasons" exist under both categories one and two to warrant commuting Callam's sentence to home confinement. The rampant spread of COVID-19 throughout the country and federal prison system – resulting in the deaths of at least eight inmates – make it impossible for Callam, a 62-year-old man with a compromised immune system, to take the necessary steps to prevent himself from contracting the virus when it inevitably infiltrates FIC Loretto as social distancing is not a viable option while confined in prison Both Callam's age and compromised immune system, therefore, justify a compassionate release under 18 U.S.C. § 3582(c)(1)(A) given these dire circumstances. Thus, the Court should follow the steps of numerous other courts and grant Callam's emergency Motion. *See, e.g., U.S. v. Jepsen,* No. 3:19-cr-00073(VLB), 2020 WL 1640232 (D. Conn. Apr. 1, 2020) (granting motion for compassionate release to Defendant who is immunocompromised and suffers from multiple chronic conditions that are in flux and predispose him to potentially lethal complications if he contracted COVID-19); *U.S. v. Perez,* No. 1:17-cr-513-3-AT (S.D.N.Y. Apr

7

1, 2020) (granting sentence reduction to time served with supervised release immediate and holding that Defendant's "exhaustion of the administrative process can be waived in light of the extraordinary threat posed--in his unique circumstances--by the COVID-19 pandemic"); *U.S. v. Williams*, No. 3:04-cr-95-MCR (N.D. Fla. Apr. 1, 2020) (granting motion for compassionate release upon finding that Defendant's cardiovascular and renal conditions which compromise his immune system, taken with his advanced age, put him at significant risk for even more severe and life threatening illness should he be exposed to COVID-19 while incarcerated); *U.S. v. Brannan*, No. 4:15-CR-80-01 (S.D. Tx. Apr. 2, 2020) (granting emergency motion on same day of filing for prisoner who had served only 9 months of a 36-month sentence for fraud at FCI Oakdale and had not exhausted BOP remedies); *U.S. v. Colvin*, No. 3:19cr179 (JBA), 2020 WL 1613943 (D. Conn. Apr. 2, 2020) (granting motion for compassionate release to Defendant with conditions making her more susceptible to COVID-19); *U.S. v. Foster*, No. 1:14-cr-324-02 (M.D. Pa. Apr. 3, 2020) (holding that the "circumstances faced by our prison system during this highly contagious, potentially fatal global pandemic are unprecedented...[i]t is no stretch to call this environment 'extraordinary and compelling,' and we well believe that, should we not reduce Defendant's sentence, Defendant has a high likelihood of contracting COVID-19 from which he would 'not expected to recover'").

IV. CONCLUSION

FCI Loretto has thus far escaped COVID-19, but it is only a matter of time before the virus infiltrates its walls and puts the lives of its personnel and inmates in grave danger. This Court has the unique opportunity to act now, commute Callam's sentence to home confinement, and give him the opportunity to quarantine with his family in safety rather than unnecessarily risking his life by being exposed to the virus in the prison system in his immunocompromised state. Given

8

these extraordinary circumstances, that time is of the utmost essence, that Callam's life is at stake, and that Callam more than satisfies all of the factors set forth by Attorney General Bar for prisoners that should be considered for home confinement, Callam respectfully requests that the Court grant this Motion and commute his sentence to home confinement. Callam also respectfully requests that, if needed, the warden and medical director of the BOP facilities at Loretto, as well as Callam, be available to testify at any hearing. A proposed order is attached hereto for the Court's convenience.

Respectfully submitted,

William E. Callam
BOP # 66252060
PO Box 1000
FCI Loretto
Cresson, PA 16630

*Pro Se Defendant*

**CERTIFICATE OF CONFERENCE**

As a federal inmate, and given the urgent nature of this Motion, I am unable to attempt to confer with United States Attorneys Justin E. Herdman or Michael L. Collyer.

_____
William E. Callam

*Pro Se Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that I sent a copy of this motion via U.S. mail on this 9th day of April, 2020, to the following:

Justin E. Herdman
Michael L. Collyer
801 W Superior Ave #400
Cleveland, OH 44113

*United States Attorneys*

_____
William E. Callam

*Pro Se Defendant*

(1317)

**USPS PRIORITY MAIL EXPRESS**

EJ 081 923 201 US

**CUSTOMER USE ONLY**
FROM: (PLEASE PRINT)
WILLIAM CALLAM
BOP # 66252060
PO BOX 1000
CRESSON, PA 16630

TO: (PLEASE PRINT)
CARL B. STOKES US COURT HOUSE
CLERK'S OFFICE
801 W. SUPERIOR AVE
CLEVELAND, OH 44113
ZIP: 44113

**ORIGIN (POSTAL SERVICE USE ONLY)**
☑ 1-Day
PO ZIP Code: 44102
Scheduled Delivery Date: 04/08/20
Postage: $26.35
Date Accepted: 04/8/20
Scheduled Delivery Time: ☑ 12 NOON
Time Accepted: 8:58 AM
Weight: 3 lbs 6 ozs
Total Postage & Fees: $26.35

LABEL 11-B, MARCH 2019   PSN 7690-02-000-9996

EP13F Oct 2018